1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MORGAN KEEGAN & COMPANY, INC.,

                    Plaintiff,

        v.

JOSEPH SHORTHOUSE, et al.,

                    Defendants.

CASE NO. C11-5734BHS

ORDER GRANTING
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

        This matter comes before the Court on Plaintiff Morgan Keegan & Company, Inc.'s ("Morgan Keegan") motion for preliminary injunction (Dkt. 4). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

        On September 14, 2011, Morgan Keegan filed the complaint in this action against Defendants Joseph Shorthouse, Denise Shorthouse and Joseph Shorthouse on behalf of KS and MS (the "Shorthouses"). Dkt. 1. On the same day, Morgan Keegan filed a motion for preliminary injunction. Dkt. 4.

## II.  FACTUAL BACKGROUND

This matter arises out of the Shorthouses' attempt to arbitrate claims that they filed against Morgan Keegan for fraud, violations of federal and state securities laws, violations of the Tennessee Consumer Protection Act, and violations of the Financial Industry Regulation Authority ("FINRA")[1] Rules 2210, 2120, and 3010.  *See* Dkt. 1-1 (the Shorthouses' statement of claims against Morgan Keegan, "SOC").

Morgan asserts that it is not subject to arbitration on the basis that it has no agreement whatsoever with the Shorthouses.  Dkt. 4.  Morgan Keegan further asserts that because the Shorthouses are not its customers, it cannot be forced to arbitrate under FINRA. It is on these two bases that Morgan predicates its motion for preliminary injunction.  *Id.*

According to the SOC, Joseph Shorthouse "invested in [Morgan Keegan's] RMK High Income Fund ("High Income Fund" of the "Fund") through TD Ameritrade, Inc. on behalf of [the Shorthouses]."  Dkt. 1-1 at 3.  Prior to purchasing the funds, "Mr. Shorthouse reviewed the RMK Funds' prospectus, statement of additional information, annual reports, semi-annual reports, quarterly reports and website marketing materials." *Id.* at 8.  According to the Shorthouses,  "Mr. Shorthouse relied on the information

---

[1] FINRA, formerly the National Association of Securities Dealers, Inc. ("NASD"), is a not-for-profit corporation registered with the Securities and Exchange Commission as a national securities association created under the Maloney Act amendments to Section 15A of the Securities Exchange Act of 1934.  *See* 15 U.S.C. § 78o-3.  The NASD Code of Arbitration was the predecessor to the FINRA Code, and FINRA has stated that it intended no substantive change when it replaced NASD Rule 10301 with FINRA Rule 12200.  *See* Comparison Chart of Old and New NASD Arbitration Codes for Customer Disputes, Rule 12200, www.fi nra.org/web/groups/rules_regs/documents/rule_filing/p018366.pdf.

provided by Morgan Keegan regarding the RMK Funds." *Id.* Absent from the SOC is

any claim by the Shorthouses that they have a contractual relationship by written

agreement with Morgan Keegan or that they are customers of Morgan Keegan. *See*

*generally*, Dkt. 1-1. Although the SOC states that "Mr. Shorthouse opened six accounts

with Morgan Keegan," (*id*. at 8) his accounts were actually opened with TD Ameritrade,

Inc.. *See id*. at 7-8.

## III. DISCUSSION

### A.    Standard

The court may issue a preliminary injunction where a party establishes (1) a

likelihood of success on the merits, that (2) it is likely to suffer irreparable harm in the

absence of preliminary relief, that (3) the balance of hardships tips in its favor, and (4)

that the public interest favors an injunction. *Winter v. Natural Resources Defense*

*Council*, 555 U.S. 7, 20 (2008). A party can also satisfy the first and third elements of

the test by raising serious questions going to the merits of its case and a balance of

hardships that tips sharply in its favor. *Alliance for the Wild Rockies v. Cotrell*, 632 F.3d

1127, 1135, 632 F.3d at 1135 (9th Cir. 2011) (holding that the Ninth Circuit's "sliding

scale" approach continues to be valid following the *Winter* decision).

### B.    Morgan's Motion for Preliminary Injunction

#### 1.    Likely To Succeed on the Merits

Arbitrability is a question for the courts to decide. *Bridge Fund Capital Corp. v.*

*Fastbucks Franchise Corp.*, 622 F.3d 996, 998 (9th Cir. 2010) ("The arbitrability of a

particular dispute is a threshold issue to be decided by the courts, unless that issue is

1  explicitly assigned to the arbitrator").  Morgan has the burden of establishing that it is

2  likely to succeed on the merits of its case.  *Winter*, 129 S. Ct. at 374.  The issue

3  underlying Morgan's motion is whether FINRA lacks the authority to arbitrate the

4  Jindras' claims against Morgan.

5       "[A]rbitration is a matter of contract and a party cannot be required to submit to

6  arbitration any dispute which he has not agreed so to submit."  *United Steelworkers of*

7  *America v. Warrior & Gulf Navig. Co.*, 363 U.S. 574 (1960).  However, when an

8  agreement to arbitrate exists, federal courts have long recognized and enforced a "liberal

9  federal policy favoring arbitration agreements."  *Moses H. Cone Mem'l Hosp. v. Mercury*

10  *Constr. Corp.*, 460 U.S. 1 (1983).  "Questions of arbitrability" – such as whether an

11  arbitration agreement exists and whether an arbitration clause covers the dispute in

12  question – are issues "for judicial determination unless the parties clearly and

13  unmistakably provide otherwise."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79,

14  83 (2002) (citing *AT&T Techs., Inc. v. Commc'n Workers of America*, 475 U.S. 643, 649

15  (1986)).

16       Here, because it appears that no arbitration agreement exists between the

17  Shorthouses and Morgan Keegan, the only available basis upon which the Shorthouses

18  can force Morgan Keegan to arbitrate their claims appears to be under FINRA.  *See* Dkts.

19  1 & 1-1.  While there is a public policy favoring arbitration, FINRA is a non-

20  governmental agency, and it has no specific grant of authority – from Congress or some

21  other form of governmental power – to conduct arbitration proceedings.  As such, its

22  authority to compel arbitration must have some contractual basis – either a contract

1   between customer and FINRA member, or an agreement between the member and

2   FINRA.  *See John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48 (2nd Cir. 2001) (finding

3   that NASD member, by virtue of its membership in NASD, had agreed to arbitrate all

4   disputes under Rule 10301 of the NASD Code of Arbitration).  Although Morgan Keegan

5   does not dispute that it is a FINRA member, it claims that the Shorthouses are not its

6   customers.

7        It appears that the Shorthouses hinge their case on Rule 12200 of the FINRA

8   Code, which states that parties must arbitrate a dispute if:

9        [a]rbitration under the Code is either:
             (1)    Required by a written agreement, or
10            (2)    Requested by the customer;
         The dispute is between a customer and a member or associated person of a
11       member; and the dispute arises in connection with the business activities of
         the member or the associated person, except disputes involving the
12       insurance business activities of a member that is also an insurance
         company.

13  FINRA Proc. R. 12200.[2]

14       Who, specifically, is a "customer" within the meaning of FINRA 12200 remains

15  unaddressed by the Ninth Circuit Court of Appeals.  However, FINRA Rule 12100(i)

16  defines "customer" only in the negative, stating: "[t]he term 'customer' shall not include

17  a broker or dealer."  Thus, the Shorthouses argue, they are customers of Morgan Keegan

18  because they are not brokers or dealers.

19

20

21  ───────────────────

22       [2] Under FINRA, "associated persons" is defined as only natural persons, which Morgan
    is not.  Therefore, the Jindras could not be proceeding under this portion of FINRA.

1    In the past, courts generally have construed the term "customer" broadly, but not

2  so broadly as to include everyone who is not considered a broker or a dealer.  *See Fleet*

3  *Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 772 (8th Cir. 2001); *BMA*

4  *Financial Services, Inc. v. Guin*, 164 F. Supp. 2d 813, 818-19 (W.D. La. 2001).  Other

5  courts have recognized that the definition of "customer" must not be so broad that it

6  would upset the reasonable expectations of the FINRA members, as parties to the

7  "contract" created by the FINRA rules.  *See BMA Financial Services, Inc.*, 164 F. Supp.

8  2d at 819 (interpreting NASD, now FINRA).  Instead, they looked at the nature of the

9  relationship between the investor and the FINRA member.  *See id.* at 820.

10    Recently, three district courts have granted a motion for preliminary injunction in

11  cases involving Morgan Keegan as the plaintiff and defendants similarly situated to the

12  Jindras.  *See Morgan Keegan & Co. v. Ras*, No. 5:11-CV-352-KKC 2011 WL _____

13  (E.D. Ken. Nov. 14, 2011); *Morgan Keegan & Co. v. Drzayick*, No. 1:11-CV-126-EJL,

14  2011 WL 5403031 (D. Idaho Nov. 8, 2011); *Morgan Keegan & Co. v. Shadburn*, No.

15  2:11-VB-624-WKW, 2011 WL 5244696 (M.D. Ala. Nov. 3, 2011).  In each of those

16  cases, the court granted the motion for preliminary injunction finding that Morgan

17  Keegan was likely to succeed on the merits because the defendants were not customers

18  under FINRA 12200.  *See id.*  In *Shadburn*, the court found that under the defendant's

19  "proposed definition . . . a FINRA member's membership alone would require

20  arbitration.  Such a result would 'do significant injustice to the reasonable expectations of

21  [FINRA] members.'"  2011 WL 5244696 at *8 (quoting *Wheat First Sec., Inc. v. Green*,

22  993 F.3d 814, 820 (11th Cir. 1993)) (alteration in original).  In addition, on facts

1    substantially similar to those present in the instant case, two courts have vacated FINRA

2    arbitration awards because the investors who purchased RMK Funds from third-party

3    brokers were not customers, thus, could not arbitrate against Morgan Keegan before

4    FINRA.  *See Morgan Keegan & Co. v. Garrett*, __F. Supp. 2d __, No. 4:10-CV-4308,

5    2011 WL 4716060 at *1-2 (S.D. Tex. Sept. 30, 2011); *Zarecor v. Morgan Keegan & Co.*,

6    No. 4:10-CV-1643-SWW at *8-9 (E.D. Ark. July 29th 2011).

7         In *Ras*, under almost identical facts to those present in the instant case, the court

8    adopted the reasoning in *Shadburn*, finding that Morgan Keegan was likely to succeed on

9    the merits, and granted the motion for preliminary injunction.  *See* 2011 WL _____.

10   Here, as in *Ras* and *Shadburn*, the Shorthouses are investors who interacted with a third-

11   party broker who had an account with Morgan; however, their third-party broker (TD

12   Ameritrade, Inc.) was not an employee, agent, or registered representative of Morgan.

13   *See* SOC.  Like the defendant in *Shadburn*, the Shorthouses' relationship with Morgan

14   Keegan is "void of any form of business qualities whatsoever."  2011 WL 5244696 at *8.

15   The Shorthouses "did not purchase shares in the RMK Fund through Morgan Keegan."

16   *Id*.  They "did not pay for any investment, brokerage or other service through Morgan

17   Keegan."  *Id*.  The Shorthouses "did not have a direct transactional relationship with

18   Morgan Keegan (or its associated person)."  *Id*. (quotations marks and citation omitted).

19   Next, the Shorthouses did not have an account with Morgan Keegan, and "Morgan

20   Keegan has no record of any documents, accounts, or files related to anyone named

21   Joseph Shorthouse, Denise Shorthouse, KS or MS."  Dkt. 5 at 3. (Declaration of William

22   Schmitt) (names of minor children redacted.  Finally, as the court held in *Shadburn*, Mr.

ORDER - 7

1    Shorthouses's reliance on Morgan Keegan's prospectus, reports, and website marketing

2    materials is insufficient to create a customer relationship with Morgan Keegan under

3    FINRA.  *See* 2011 WL 5244696 at *9.

4          Five district courts in five different circuits "have all concluded that individual

5    investors who purchased the RMK Fund from third-party brokers were not customers of

6    Morgan Keegan and cannot force Morgan Keegan to participate in FINRA arbitration."

7    *Ras* 2011 WL _____.  Here, as in *Ras*, the Shorthouses offer "no case law that reaches

8    a contrary result on similar facts."  *Id.*

9          Accordingly, the Court adopts the reasoning in *Shadburn* and *Ras* in concluding

10   that the Shorthouses are not "customers" of Morgan Keegan under FINRA 12200.

11   Therefore, Morgan is likely to succeed in establishing that it is not subject to arbitration

12   with the Shorthouses under FINRA.

13   **2.    Irreparable Harm**

14         Morgan cites several unpublished cases to the effect that a party suffers per se

15   irreparable harm when it is forced to arbitrate claims that are not arbitrable.  *See* Dkt. 4 at

16   13-15 (collecting cases).  The Court also finds that case law supports finding that a party

17   suffers irreparable harm when it is "forced to expend time and resources arbitrating an

18   issue that is not arbitrable."  *See, e.g.*, *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337

19   F.3d 125, 129 (2d Cir. 2003); *Paine Webber, Inc. v. Hartman*, 921 F.2d 507, 515 (3rd

20   Cir. 1990) (holding that Paine Webber would suffer per se irreparable harm if a

21   preliminary injunction was not entered prior to the court's determination of whether the

22   customer's claims at issue were eligible for NASD, now FINRA, arbitration).

1    Therefore, for purposes of this motion, the Court finds that Morgan Keegan will

2    suffer irreparable harm if it is forced to arbitrate what appears to be claims that are not

3    arbitrable.

4        **3.      Balance of Hardships**

5        To determine whether the balance of hardships favors the moving party, courts

6    must "balance the interests of all parties and weigh the damage to each."  *Stormans, Inc.*

7    *v. Selecky*, 571 F.3d 960, 988 (9th Cir. 2009).

8        Here, as explained above, it appears that the Jindras have no right to force Morgan

9    Keegan to arbitrate this action.  If the Court denied the preliminary injunction, Morgan

10   Keegan would be forced to spend substantial time and resources defending the

11   Shorthouses' claims before FINRA.  Allowing the Shorthouses to proceed with

12   arbitration would benefit them in no way because the arbitration award would ultimately

13   have to be set aside by the Court.

14       Thus, the balance of equities favors granting the injunction to prevent arbitration.

15       **4.      Public Interest**

16       It is not in the public interest to force a party into arbitration on issues that are not

17   arbitrable.  Because it appears that the Shorthouses have no basis upon which to force

18   Morgan Keegan into arbitration, it would be against the public interest to deny the

19   preliminary injunction.

20       **5.      Bond**

21       Pursuant to Rule 65(c) of the Federal Rule of Civil Procedure 65(c), the Court may

22   require the party seeking a preliminary injunction to post a security bond "in an amount

1   that the court considers proper to pay the costs and damages sustained by any party found

2   to have been wrongfully enjoined or restrained."

3          It does not appear that a bond is necessary in this matter. Therefore, no bond will

4   be required.

5   **C.     Conclusion**

6          A preliminary injunction enjoining the Shorthouses from proceeding in arbitration

7   against Morgan Keegan is warranted in this instance.

8                                       **IV.  ORDER**

9          Therefore, it is hereby **ORDERED** that:

10         1.     Morgan's motion for preliminary injunction is **GRANTED** as discussed

11  herein.

12         2.     Unless and until the Court orders otherwise, the Shorthouses are enjoined

13  from proceeding in the arbitration proceeding before FINRA, styled *Joseph Shorthouse,*

14  *Denise Shorthouse, and Joseph Shorthouse on behalf of KS and MS v. Morgan Keegan &*

15  *Company, Inc.*, FINRA Case No. 11-02889.

16         Dated this 22nd day of November, 2011.

17

18

19                                     BENJAMIN H. SETTLE
                                       United States District Judge

20

21

22

ORDER - 10